IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 11-cv-02905-WJM-CBS

BARBARA ROSE,

    Plaintiff,

v.

THE HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, and
JOHN AND JANE DOES NUMBER 1-10

    Defendant.

---

**ORDER AFFIRMING DEFENDANT'S DENIAL OF
LONG TERM DISABILITY BENEFITS**

---

This case arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). Plaintiff Barbara Rose claims that Defendant Hartford Life and Accident Insurance Company ("Hartford" or "Defendant") violated ERISA when it issued its final determination letter dated October 13, 2010, upholding its earlier decision to deny long-term disability benefits to Plaintiff. (ECF No. 2.)

For the reasons set forth below, Defendant's denial of benefits is affirmed and Plaintiff's claim for disability benefits is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff began working as a psychiatrist for Colorado Permanente Medical Group, P.C. on December 15, 2008. (Record ("R.") (ECF No. 15) at 76.) In conjunction with her employment, Plaintiff was a participant in an employee welfare benefit plan, which included a long-term disability policy through Defendant Hartford. (R. 1-40.) The

Hartford Policy Number for Colorado Permanente Medical Group, P.C. is GVL-16008

(the "Policy").  (R. 1.)  The relevant portions of the Policy are as follows:

> **Pre-existing Conditions Limitation**: *Are benefits limited for Pre-existing Conditions?*
>
> We will not pay any benefit, or any increase in benefits, under The Policy for any Disability[1] that results from, or is caused by or contributed to by, a Pre-existing Condition, unless, at the time You become Disabled:
> 1) You have not received Medical Care for the condition for 3 consecutive month(s) while insured under The Policy; or
> 2) You have been continuously insured under The Policy for 12 consecutive month(s).
>
> **Pre-existing Conditions** means:
> 1) any Injury, Sickness, Mental Illness, pregnancy, or episode of Substance Abuse; or
> 2) any manifestations, symptoms, findings, or aggravations relating to or resulting from such accidental bodily injury, sickness, Mental Illness, pregnancy, or Substance Abuse;
>
> for which You received Medical Care during the 3 month(s) period that ends the day before:
> 1) Your effective date of coverage; or
> 2) the effective date of a Change in Coverage.
>
> **Medical Care** is received when a physician or other health care provider:
> 1) is consulted or gives medical advice; or
> 2) recommends, prescribes or provides Treatment.
>
> **Treatment** includes, but is not limited to:
> 1) medical examinations, tests, attendance, or observation; and
> 2) use of drugs, medicines, medical services, supplies or equipment.

(R. 17.)

---

[1] All capitalized words are defined elsewhere in the Policy.  The relevant definitions are provided herein.

Plaintiff became eligible for benefits under the Policy on April 13, 2009. (R. 81.) On October 15, 2009, Plaintiff stopped working due to various medical conditions that caused her severe pain. (R. 833.) The consistent opinion of Plaintiff's medical providers is that Plaintiff became disabled as of October 15, 2009 due to pain, including neck pain. (*E.g.*, R. 128-32, 837-38.) Thus, it is undisputed that October 15, 2009 is the date of Plaintiff's disabling injury.

On April 21, 2010, Plaintiff applied for long-term disability benefits under the Policy. (R. 832-38.) On May 11, 2010, Hartford acknowledged receipt of Plaintiff's application for benefits and requested additional information to help Hartford determine whether Plaintiff's disabling condition was related to a pre-existing condition. (R. 81-82.) Plaintiff provided the requested information, as well as other materials that Hartford later requested during its investigation. (R. 86, 92, 96, 100-03, 469, 798-803.)

On August 19, 2010, Hartford sent Plaintiff a letter denying Plaintiff's claim for long-term disability benefits ("Denial Letter") based on the Policy's Pre-existing Condition Limitation. The Denial Letter reiterated the relevant portions of the Policy, listed Hartford's bases for its decision, including the relevant medical evidence it had considered, and informed Plaintiff of her administrative appeal rights. (R. 104-08.) The relevant portion of the Denial Letter stated:

> Our review of your file indicates that you had a fractured T6 and T9 vertebrae with subsequent removal of rods in 2002 which left you with a thoracic kyphosis[2] that Dr. Jones concludes causes you to compensate by throwing your neck

---

[2] Kyphosis is a severe curving of the spine, sometimes referred to as "hump-back".

3

>     into increased lordosis[3] to keep your center of gravity, which aggravates your neck. Kaiser Pharmacy records document that you purchased Cyclobenzaprine for muscle spasms and back pain on 04/10/2008 and 08/19/2009; Gabapentin for back pain on 04/10/2009, 05/01/2009, 05/27/2009, 07/07/2009, and 09/25/2009; and Tramadol . . . for back pain on 04/10/2009. Based on this information, your current neck pain is related to your past thoracic injury which you received Medical Care for during the 3 month period prior to your insured date of 04/13/2009. In addition, you did not have a 3 month period without treatment beginning on or after your insured date of 04/13/2009. Therefore, your Disability is excluded according to the Pre-existing Condition Limitations provision, and no benefits are payable under this policy. Accordingly, your claim for benefits has been denied.

(R. 107.)

Plaintiff appealed the denial of benefits. (R. 744-51.) In conjunction with her appeal, Plaintiff submitted an e-mail from Dr. Sanjay Jantana, the physician that performed her back surgeries in 2000 and 2002, and with whom she received ongoing follow-up care for her thoracic kyphosis. (R. 745.) In response to Plaintiff's question about whether patients who had a T4-T10 fusion developed C5-C6 autofusions, Dr. Jantana replied "Not related". (Id.) Hartford attempted to contact all of Plaintiff's doctors to discuss her condition, and also submitted Plaintiff's appeal for an independent physician review. (R. 111-115.)

On October 13, 2010, Hartford notified Plaintiff that her appeal was unsuccessful, and that her claim for long-term disability benefits was denied. (R. 116-120.) The Appeal Letter stated that, after a review of Plaintiff's entire file, including an independent medical review, Hartford had determined that Plaintiff's neck and back

---

[3] Lordosis is an excessive inward curvature of the spine.

pain fell under the Pre-existing Condition Limitation. (R. 116.) The Appeal Letter accurately stated the pertinent portions of the Policy, including the Pre-existing Condition Limitation, reviewed the procedural history of Plaintiff's claim, and informed Plaintiff of the relevant opinions offered by Dr. Boscardin, the independent medical examiner. (R. 117-19.) The Appeal Letter concluded:

> Based on the opinion of Dr. Boscardin, your thoracic kyphosis is aggravating your spinal and cervical stenosis due to the increased lordosis, and he also confirmed that you did received treatment during the look back period of January 12, 2009 through April 12, 2009, by way of prescription medications refills, which were confirmed by Dr. Porter to be for your thoracic condition, therefore, that condition is excluded from benefit payment, as it is considered Pre-existing.
>
> A review of the evidence finds that your condition of neck pain is considered to be related to the thoracic back pain, and they are both considered pre-existing and therefore excluded from benefit payment under this Policy, as such, this denial was appropriate and it stands.

(R. 120.) The Appeal Letter informed Plaintiff that this determination regarding Plaintiff's eligibility for benefits was Hartford's final decision on her claim, and that she was entitled to bring a lawsuit under ERISA. (*Id.*)

Plaintiff, through counsel, sent a formal request for reconsideration of the denial of benefits on August 10, 2011. (R. 134-40.) Plaintiff submitted additional records from Kaiser Permanente, as well as the disability determination of the Social Security Administration, which had been issued on July 14, 2011. (*Id.*) Hartford summarily denied Plaintiff's request for reconsideration, again notifying her that its final decision was the October 13, 2010 Appeal Letter. (R. 123.)

On October 14, 2011, Plaintiff filed this action in state court claiming that she was wrongfully denied benefits under the Policy. (ECF No. 2.) Hartford removed the case to this Court on November 8, 2011. (ECF No. 1.) The Administrative Record was filed on March 1, 2012, and supplemented on March 1, 2013. (ECF Nos. 15 & 47.) Plaintiff filed her opening brief on March 1, 2013. (ECF No. 48.) Hartford filed its response brief on April 5, 2013 (ECF No. 58), and Plaintiff filed her reply on May 6, 2013. (ECF No. 66.) The case is ripe for review.

## II. STANDARD OF REVIEW

ERISA governs employee benefit plans, including disability benefit plans. 29 U.S.C. §§ 1101 *et seq.* "When an individual covered by the plan makes a claim for benefits, the administrator gathers evidence, including the evidentiary submissions of the claimant, and determines under the plan's terms whether or not to grant benefits. If the administrator denies the claim, the claimant may bring suit to recover the benefits due to him under the terms of his plan." *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1308 (10th Cir. 2007) (citing 29 U.S.C. § 1132(a)(1)(B)) (internal quotation marks and brackets omitted). Federal courts have exclusive jurisdiction over such suits, as ERISA preempts most relevant state laws. 29 U.S.C. § 1144(a).

The Supreme Court has held that "a denial of benefits challenged under [the civil enforcement provision of ERISA, 29 U.S.C.] § 1132(a)(1)(B)[,] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the court determines whether the denial of benefits was arbitrary

and capricious. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Trujillo v. Cyprus Amax Minerals Co. Ret. Plan Comm.*, 203 F.3d 733, 736 (10th Cir. 2000) ("arbitrary and capricious" standard should be applied to a plan administrator's actions). Under the arbitrary and capricious standard, the administrator's decision need not be the only logical one or the best one; the decision will be upheld provided that it is "grounded on any reasonable basis." *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999). "The reviewing court need only assure that the administrator's decision falls somewhere on a continuum of reasonableness— even if on the low end." *Nance v. Sun Life Assurance Co. of Can.*, 294 F.3d 1263, 1269 (10th Cir. 2002).

Plaintiff acknowledges that the Plan gives Hartford discretion to interpret its provisions, which would ordinarily require the Court to apply the arbitrary and capricious standard of review under the relevant case law. (ECF No. 53 at 15.) Plaintiff contends, however, that Colorado Revised Statutes §§ 10-3-1116(2) and (3) ("§ 1116") prohibit employee benefit plans from reserving discretion to themselves, and requires that the Court employ *de novo* review. (*Id*. at 10.) In response, Hartford argues that the Court cannot retroactively apply § 1116 to the Plan in this case, and therefore the arbitrary and capricious standard applies. (ECF No. 58 at 11-12.)

Whether § 1116 has been preempted by ERISA appears to be an open question in this circuit. *Compare McClenahan v. Metro. Life Ins. Co.*, 621 F. Supp. 2d 1135, 1140 (D. Colo. 2009) (finding that § 1116 is not preempted by ERISA but refusing to apply in that case because § 1116 was enacted after the benefits decision had been

made) *with Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141 (10th Cir. 2009) (finding similar Utah statute was preempted by ERISA); *Flowers v. Life Ins. Co. of N. Am.*, 781 F. Supp. 2d 1127 (D. Colo. 2011) (finding that § 1116(1) was preempted by ERISA but limiting its holding to that particular subsection). The parties' disagreement regarding the applicable standard of review focuses on two complex issues: federal preemption of state statutes, and retroactivity of legislation. The Court finds that it need not delve into this difficult issue because, even if the Court applies the more favorable *de novo* standard of review, Plaintiff has failed to show that she is entitled to benefits. *See Briscoe v. Fine*, 444 F.3d 478, 496 (6th Cir. 2006) (declining to resolve dispute over applicable standard of review because claim failed under more lenient standard). As such, the Court assumes without deciding that the *de novo* standard of review applies in this case.

### III. ANALYSIS

Plaintiff contends that Hartford erred by improperly inserting restrictions into the Policy via its explanation for the denial of benefits in the Appeal Letter, and that Hartford is precluded from changing rationales at this stage of the litigation. (ECF No. 66 at 6.) Plaintiff also argues that Hartford failed to consider supplemental medical evidence she submitted after receiving her Appeal Letter. (ECF No. 53 at 27.) Finally, Plaintiff argues that, based on the entirety of the Record, she is entitled to benefits under the Policy. (*Id.*) The Court will address each of these contentions in turn below.

**A. Appeal Letter's Explanation for Denial of Benefits**

Plaintiff argues that Hartford erred when considering her appeal because the

Appeal Letter inserts a restriction into the Policy that does not appear in the Policy's language. (ECF No. 53 at 15.) For purposes of this argument, the relevant portion of the Policy is an exception to the pre-existing condition exclusion, which allows a covered individual to receive benefits if she has "not received Medical Care for the condition for 3 consecutive month(s) while insured under The Policy" (the "Exception"). (R. 17.) With regard to this provision, Hartford's Appeal Letter states:

> In order for you to be eligible for Long Term Disability benefits, you must have been continuously insured for a period of twelve (12) months prior to your disability (December 15, 2008 through December 14, 2009), or you must not have received any Medical Care for your condition for three months while insured (*April 13, 2009 through July 13, 2009*). You were seen by Dr. Nagashima on June 8, 2009, and it was noted that your active problems included anxiety disorder, chronic low back pain and major depression, therefore, you failed to meet the provision of the Policy, as such, we had to investigate your claim to determine if your disabling condition was pre-existing.

(R. 439 (emphasis added).) Plaintiff argues that Hartford erred by limiting the Exception to the first three months she was insured, rather than *any* consecutive three month period. (ECF No. 53 at 15.)

Hartford admits that the inclusion of the emphasized dates—April 13, 2009 though July 13, 2009—was error, because the Policy does not limit application of the Exception to the first three months of coverage. (ECF No. 58 at 24.) Hartford offers no explanation for this error, and admits that the Administrative Record does not contain any information that would explain why the Appeal Letter contains these dates. (*Id.*) However, Hartford argues that this error had no effect on its determination of Plaintiff's entitlement to benefits and was not material to the appeal determination. (*Id.*)

9

Having reviewed the relevant portions of the Administrative Record, the Court agrees with Hartford's position that this error in stating the legal standard did not affect Hartford's overall denial of benefits. The initial Denial Letter correctly applies the Exception, and finds that Plaintiff did not have *any* consecutive three month period in which she did not have Medical Treatment for her back pain. (R. 104-08.)

Plaintiff also argues that, when reviewing a denial of disability benefits, the Court can only consider the rationale asserted by the insurance company and, therefore, the Appeal Letter binds Hartford to this erroneous rationale. (ECF No. 66 at 6.) However, the case law does not support Plaintiff's argument in this context. The cases hold that an insurer is generally precluded from changing the overall basis for its denial and, therefore, had Hartford initially denied benefits based on the Pre-existing Condition Limitation, it could not later abandon this explanation and claim that Plaintiff was not entitled to benefits because she had failed to pay her premiums or made misrepresentations on her application. *See Pub. Serv. Co. of Colo. v. Wallis & Cos.*, 955 P.2d 564, 571 (Colo. App. 1997) ("When an insurer denies coverage on specific grounds, it waives the right later to assert additional defenses to coverage"). In this case, Hartford has consistently maintained its position that Plaintiff is not entitled to benefits because of the Pre-existing Condition Limitation.

It is also true that, when determining whether an insurer's denial of benefits was arbitrary and capricious, a court must look only at the rationale offered by the insurance company. *See Spradley v. Owens-Illinois Hourly Emps. Welfare Benefit Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012) (under the arbitrary and capricious standard of review, the court may consider "only the rationale asserted by the plan administrator in the

administrative record"). However, the Court has already stated that it intends to review *de novo* whether Plaintiff is entitled to benefits. Because the Court will take a fresh look at Plaintiff's eligibility for benefits, any misstatement of the Policy provisions in the Appeal Letter is irrelevant. The ultimate question is whether Plaintiff is entitled to benefits, which the Court will consider *de novo* based on its review of the administrative record.

**B.     Supplemental Evidence Submitted by Plaintiff**

Approximately ten months after receiving the Appeal Letter, Plaintiff submitted a letter to Hartford providing new information about her condition, along with "voluminous supporting documentation in the form of additional medical records and a determination from the Social Security Administration that Dr. Rose was disabled as of October 15, 2009, for conditions including neck problems." (ECF No. 53 at 27 (citing R. 124-416).) Plaintiff asked Hartford to reconsider the denial of her benefits based on this information. (*Id.*) Hartford acknowledged receipt of the materials but refused to reconsider its decision, stating that Plaintiff had exhausted her administrative remedies under the Policy and that no further process was necessary. (R. 123.)

Notably, Plaintiff cites no case law requiring Hartford to reopen Plaintiff's file and consider this supplemental medical evidence, ten months after Plaintiff's appeals under the Policy were exhausted. However, in the interest of a "full and fair review", which ERISA requires, the Court will consider this supplemental evidence in its *de novo* review.

**C.     *De Novo* Review of Plaintiff's Entitlement to Benefits**

As indicated above, the Court will review *de novo* whether Plaintiff is entitled to benefits under the Policy.  The Policy states that benefits will not be paid "for any Disability that results from, or is caused or contributed to by, a Pre-existing Condition, unless, at the time You become Disabled: (1) You have not received Medical Care for the condition for 3 consecutive month(s) while insured under the Policy."  (R. 7.)  The Policy defines "Pre-existing Conditions" to mean:

>   1)   any Injury, Sickness . . . or
>   2)   any manifestations, symptoms, findings, or aggravations relating to or resulting from such accidental bodily injury, sickness . . . ;
>
>   for which You Received Medical Care during the 3 month(s) period that ends the day before:
>
>   1)   Your effective date of coverage; or
>   2)   the effective date of a change in Coverage.

(R. 17.)  "Medical Care" is defined as: "when a physician or other health care provider: (1) is consulted or gives medical advice; or (2) recommends, prescribes, or provides Treatment."  (*Id*.)  "Treatment" under the Policy includes "use of drugs, medicines, medical services, supplies, or equipment."  (*Id*.)

The Administrative Record shows that Plaintiff has a long history of problems with her spine, including thoracic kyphosis, which is a severe curving of the spine, sometimes referred to as "hump-back".  (R. 815.)  Plaintiff had spine fusion surgery (T3-T9) in 2000, with follow-up surgery in 2002 to remove the rod.  (R. 59, 199, 220-22.)  Medical records show that, on April 10, 2009, Plaintiff filled a prescription for Tramadol, Gabapentin, and Cyclobenzaprine, which was prescribed for her back pain.  (R. 742.)

Plaintiff also filled prescriptions for pain medication for her back condition in May 2009, July 2009, September 2009, October 2009, and November 2009. (R. 53-54.)

Under the terms of the Policy, taking prescription medication constitutes Medical Care. (R. 17.) Because Plaintiff filled a prescription on April 10, 2009, which is less than three months prior to Plaintiff's effective date of coverage (April 13, 2009), Plaintiff's back pain is a Pre-Existing Condition under the Policy. (*Id*.) Additionally, because there was no consecutive three month period in which Plaintiff did not receive Medical Treatment for her back pain while she was covered by the Policy, the exception to the Pre-existing Condition Limitation does not apply. (*Id*.)

Thus, the only remaining question is whether Plaintiff's disabling condition—neck pain—"results from, or is caused or contributed to by" Plaintiff's Pre-Existing Condition. Plaintiff argues that her neck pain is an independent degenerative issue that is unrelated to her back problems. (ECF No. 66 at 13-14.) She cites evidence in the record showing that Plaintiff first complained of "axial neck pain" in 2001, following which it was determined that she had "moderate spinal stenosis and bilateral neural formaminal narrowing at C5-C6 and C6-C7." (R. 162, 190.) In 2007, Dr. Jantana noted that Plaintiff had "[d]econditioning of her cervical spine", which was separately listed from her "[t]horacic kyphosis due to fractures and surgery." (R. 149.) Plaintiff contends that her neck pain is caused by a C5-C6 autofusion that was first diagnosed in January 2010, and which Dr. Jantana has stated is "not related" to her thoracic kyphosis. (R. 283, 751.)

The Court does not find Dr. Jantana's opinion regarding the related nature of Plaintiff's conditions to be instructive. Plaintiff apparently called Dr. Jantana's office to

inquire as to the percentage of people who have had a T4-T10 fusion and later develop a C5-C6 autofusion, and an employee in Dr. Jantana's office posed this question to him via e-mail. (R. 751.) Dr. Jantana's response stated: "Not related." (*Id.*) There is no indication that Dr. Jantana examined Plaintiff prior to offering this opinion, or consulted with the physician treating Plaintiff's neck pain. Dr. Jantana has not opined that Plaintiff's neck pain is caused by the C5-C6 autofusion, rather than being caused by or related to her back issues. Nowhere in the Record does Dr. Jantana attempt to explain his conclusion that these conditions are "not related" or otherwise justify such opinion with medical evidence.

On the contrary, there is significant evidence in the Record showing that these conditions are related. Dr. Jones, who treats Plaintiff for her neck pain, opined that Plaintiff could not perform her job "because of her thoracic kyphosis throwing her cervical spine into compensatory hyperextension." (R. 763.) He also stated that Plaintiff's "thoracic kyphosis throws her neck I think into cervical extension and gives her marked base of neck pain, which I think is facet mediated." (R. 762.) Signficantly, after opining that Plaintiff's neck condition was "not related" to her prior spinal fusion, Dr. Jantana noted that Plaintiff has "compensatory lordosis above and below her thoracic deformity and fusion". (R. 766.)

On this evidence, the Court concludes that Plaintiff's neck pain is at least contributed to, if not caused by, her pre-existing back condition. Given this conclusion, the Court finds that Plaintiff has not shown that she is entitled to benefits under the Policy. Accordingly, Hartford's denial of benefits is affirmed.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's claim for long-term disability benefits under ERISA (ECF No. 1) is DENIED;

2. The Clerk shall enter judgment in favor of Defendant; and

3. Defendant shall have its costs.

Dated this 11th day of June, 2014.

BY THE COURT:

William J. Martinez
United States District Judge